All rise. This Honorable Appellate Court, 3rd Judicial District of Illinois, is now in session. Your Honorable William P. Holder, Presiding Justice. Thank you. Please be seated. Thank you, Madam Clerk. Please call the first case. 3-10-0277 Pamela Dennis, Appellate from Mary Stewart v. Winstein, Kavensky & Wallace, et al. Appellate by Michael Wilson. Ms. Stewart, you may proceed. Thank you. We're starting a little early. That's fine. We could wait. Keep things moving along. I don't think an extra minute or two would make any difference. My name is Mary Stewart, and I represent Pamela Dennis, who is the appellate in this case, was the plaintiff in the underlying lawsuit. Just real briefly, I'm sure you're aware of the facts, but this is a legal malpractice case. We represent Ms. Denison, and the trial court granted summary judgment on the claim for legal malpractice, basically on one of the four elements for legal malpractice. We have the burden of establishing four elements, that there's an attorney-client relationship, that there was a breach of that creative duty, that there was a breach of that duty by the negligence of the defendants or the appellees in this case, that the attorneys or the defendants were the approximate cause of the damages and the plaintiff had damages. For purposes of the summary judgment, the judge ruled that as a matter of law, only one of the elements could not be established by Ms. Dennis. That was the issue of approximate cause. So the appeal is primarily related to whether or not, as a matter of law, we can establish approximate cause of the defendants for my client, Ms. Dennis' damages. And I submit that the trial court earned and granted summary judgment on that issue, because I believe that the evidence shows that there was no break in approximate cause, as the trial court found, but a very minimum that there's still factual issues regarding whether or not the defendants or appellees can be considered to be the approximate cause for Ms. Dennis' injuries. Just in case you accidentally misspoke there, I want to make sure. For summary judgment purposes, the issue here is whether the trial court has corrected, as a matter of law, they cannot show approximate cause between the appellees and any damages. The plaintiff, Ms. Dennis, cannot. That's correct. That's what the trial court found. We appealed from that order, and I disagree. Why did the trial judge go and talk about damages then? The trial court, for purposes of ruling on the summary judgment, said that he believed there were still factual issues as to whether or not we could establish damages, so he wasn't going to rule on summary judgment on that issue. He also stated, for purposes of his ruling, he was assuming that the first two elements were met, that there was the attorney-client relationship, and also that there was a breach of the duty by the defendant-appellees, and therefore that they were negligent, for purposes of ruling on the summary judgment. Still, it would be unnecessary to talk about damages, wouldn't it? Well, if the court finds that there was no approximate cause, right. That's why the court did say, though, it found that there were factual issues on that, so it wasn't going to grant summary judgment on that issue. But you're right. As long as they're finding on one element, that's all the trial court would need to find. I agree with that. Okay. And why I believe that there was no break in the approximate cause, the argument from the appellees, basically, is that my client, Ms. Dennis, brought in a second attorney and a successor attorney at some point, and that that, therefore, would leave them with their liability to Ms. Dennis, because the second attorney basically could have cured any problems and taken over the case. I disagree with that for several reasons. Number one, well, this is our case. I think the facts are distinguishable from other cases in which the courts have held that successor attorney kind of does break the approximate cause chain. Number one, in the other cases, every case that I've reviewed, there is no issue that the initial attorneys had been either discharged by the client or that the attorneys had withdrawn from the case themselves or broke that attorney-client relationship before the second attorney or successor attorney got involved in the case. Here, the record shows that the appellees never did file any motion to withdraw. The trial court never granted them leave to withdraw, and that they were still attorneys of record in the case from Ms. Dennis. I think that's one difference in the case. Is the trial judge, Frank, in effect implicitly ruling there is a constructive discharge or withdrawal? He doesn't state that, but I guess that's what he's saying. He's got several facts set out in his order granting the summary judgment. But I found no cases where there is constructive discharge. In each of the cases for legal malpractice that were cited by either side, there had clearly been a discharge of the first attorney, and we submitted an affidavit in opposition to the summary judgment motion in which Ms. Dennis, the plaintiff, stated that she never had discharged the appellee defendants as her attorneys in the case. Well, what happened when she was dealing with the other attorneys? Well, the other attorney came in to argue against the motion to enforce the settlement that had been filed by the defendant appellees in this case. The reason she hired the attorney wasn't to proceed with the case. At the time he got involved, and that's another reason why I don't believe there was a break in the approximate cost because the case really wasn't viable. The case had already been settled by the defendant appellees for $15,000. An order of dismissal had already been signed by the judge. And then after Ms. Dennis said she didn't want to proceed with the settlement, her own attorneys, the appellees in this case, filed a motion to enforce the settlement against her wishes, which did create a conflict position, but they never withdrew from the case. And the motion to enforce was filed against somebody who was on record still their client. Exactly. They took an adversary position in court against someone who, on the record, they represent. That's exactly right, Judge. And I think in the record it's clear that they knew, obviously, that Ms. Dennis objected to the settlement. Otherwise, first of all, they wouldn't have had to file the motion to enforce settlement. And secondly, even though she had brought another attorney or got someone to appear at the hearing just to oppose the motion that they had filed against her, it's because they had filed that motion against her that they were in court for a hearing back on May 21st of 2007. At that point, the other attorney was arguing against the position that the appellees had put Ms. Dennis in, and they argued even at that hearing that the settlement should be enforced when they obviously knew their client didn't want that. And at the time that Mr. Wisner got involved, like I said, the case had already been dismissed with prejudice. There was just this motion to enforce settlement. So there was really nothing he could do. The cases that were cited by the appellees in their brief, there's a couple cases, I think, Gland and another case where they talk about once there's another attorney involved and the second attorney has a chance to correct or undo the wrong, then the first attorneys are basically off the hook. Well, in this case, Mr. Wisner didn't really have that opportunity. In the other cases where the second attorney was found to break the proximate clause, there's really some evidence that the second attorney did something wrong, that he could have refiled a case that had been dismissed without prejudice within a year and didn't do it, that he still had time to diligently try and obtain service on defendants but didn't do it. Here, there's really nothing Mr. Wisner did or didn't do that could be considered negligent that contributed to this issue. What about the appeal issue? Well, the appeal, first of all, I would say, like I mentioned before, the appellees were still the attorneys of record, too. They didn't appeal. Mr. Wisner, at that time the case was dismissed, though, and none of the cases on legal malpractice that I saw talk about whether or not the case could be appealed, what's the success likelihood on appeal. Plus, in order to make that argument, I think the appellees would have to show that if an appeal would have been pursued, it would have been successful, and there's no evidence in the record of that to say it would have been a successful appeal. Well, I mean, a form over substance here, in a way. I mean, why would the defendant, why would the defendant appellees appeal? What would they actually appeal? Well, because they still represented Ms. Dennis and they had a fiduciary obligation to her. They would appeal a judgment that ultimately was in their favor? Well, since they represented her or they needed to get out, which is probably what they should have done. There is an ethical issue here that really is pretty serious, in my mind, anyway. But that's not really what's before us as a matter of law. And in the record, it's really not clear either because there's a lot of, the parties hadn't discovered or conducted any discovery. The Second Law Firm never withdrew, did they? He did not either, correct. And there's nothing in the record to indicate if he's hired solely. She had to file a pro se appeal, right? Correct. Okay, and they had not withdrawn from the case, correct? Not that I'm aware of, but the record doesn't show really one way or the other. We were not allowed or we didn't get to doing any discovery in the underlying case, so we don't guess that part of the record. Under Supreme Court 13, there would be documents filed that they gave notice to the client that were temporary. Correct, and I don't, there's none in the record. There's nothing in the record like that. No, and there's nothing in the record to show that the appellees withdrew either from the case. So, and what I was going to mention is. So, it turns out, I mean, to the man on the street, she has two attorneys and she's filing a pro se appeal? That neither attorney filed. Under the records that we have. Right, and that's what the record indicates. We don't have, I don't have the initial notice of appeal that was filed. However, we do have a copy of this court's order of dismissal case. Well, the court can take judicial notice of it. Right, and the court, I think, did eventually dismiss it. There's no issue about that. I'm sorry to interrupt, but I think you'll find this on track. These second attorney cases, there's an issue about whether, when the second attorney comes in, the case is still viable. Correct. And we're thinking, does viable mean, you know, it can live on its own? Or does it mean, you know, if the case is in a cone? In other words, we don't know anything about if that first case, when the second, at the time of the motion for settlement. In other words, why this settlement was achieved so quickly. In other words, were there discovery deadlines blown? Was it too late? Did they not have the proper experts? All these kinds of things that might have basically meant that case was, you know, on life support. And not really viable. So, do we know? Do we know any of that from the file? We don't know all that, Judge. And I think that's why there's genuine issues that remain as to whether this case was viable. I think it wasn't, but in a minimum, I think there are genuine issues of fact on that issue. The record doesn't, there's not enough evidence in the record to make that determination. Well, the judge knows and can look at the fact that there's been a case that's been dismissed. It can conclude whether limitations, there's a limitations issue or it can be refiled, right? As far as since it was a dismissal with prejudice? Well, what was basically the trial judge's ruling, arguably in favor of the defendant, I believe? Well, what the court ruled on the motion to enforce settlement, I think basically the settlement was eventually, it was basically, it was enforced eventually. The court stated in its order from back in June of 07 that the plaintiff had basically 30 days to pay the appellees the $5,000 they would have received from the settlement plus any expenses they had. And once she did that, then the appellees would have to give her a file back and the case would be assigned to another judge. As Judge Schmidt pointed out, there's nothing in the record, though, to indicate even the status of that case. If you look at the hearing record or transcript from back in May of 07 on the motion to enforce settlement, the attorney for the defendant in the underlying case, Metropolitan Laboratory, he pointed out that at that point there was no reason to set aside the dismissal anyway because no experts had been disclosed. The case was ready for trial and there was nothing that could be done at that point anyway. I think there are issues of fact, well, then was it a viable case or not? Because we don't know, even if the case went back for a case management conference, the trial judge could have said, well, there was already a previous order entered in here, no experts were disclosed, you lose the case. It's a medical practice case. They have to have a liability expert. And if you take a voluntary dismissal and say refile, they can use your, that doesn't mean necessarily you get to start all over. If you violate the discovery rules in the prior case, they can say, wait a minute, you can't get past your failure to timely disclose experts by a dismissal and a refiling, right? That's correct. The court could have still applied the original case management order that was entered in the case. So I think what we have to look at is was there anything Mr. Wissner really did wrong that kind of was a success or negligence to the negligence of the appellees? And I just don't think there was. When he entered in the case, and we don't even know, it's not clear from the record, was he hired only to appear at that hearing, what his role was going to be? I think that's another factual issue that needs to be developed. But that's not the factual issue in the malpractice case against these appellants. That's not the factual issue. The factual issue is about viability, isn't it? But the appellees are arguing it was viable because Mr. Wissner was in the case. Whether there's a malpractice claim against a successor attorney is not the issue in our case. No, I'm not arguing that there was against a second attorney. I'm saying that the appellees are arguing the case was viable because Mr. Wissner had entered his appearance. I'm saying it's not clear from the record. Did he enter his appearance for that limited reason of opposing that motion, or was he going to continue on and do more to the case? What you're really saying is that prior cases are saying that that underlying claim that there may or may not have been legal malpractice committed by the prior attorneys, that it's a viable claim at the time a successor attorney came in and that the client could have received full legal representation and be given the panoply of potential damages. Correct. It could have proceeded the case. Right. As if it were a new filing from scratch with no encumbrances on it, correct? Correct. And what you're saying that there is a question as to whether that is indeed the case under the case law that is of successor attorneys breaking the proximate cause chain. Yes. Is that kind of a fair summary? Yes, Judge. And if you look at the cases I cited, especially the Lopez case, and it's a federal court case, Soblovod, I'm not sure how to pronounce it, that relied on the Illinois state court cases, they looked into the issue of approximate cause, whether reasonable minds can differ as to whether the case was viable when the second attorney became involved. I think here clearly reasonable minds can differ whether the case was viable. No experts have been. Okay. It's because really what you're saying, though the court's order says pay the Winstein firm their fee, their contingent fee, plus costs advanced, right? Correct. And you can have the file back and you can go on your merry way with your lawsuit, right? Well, although the judge did not address the issue of whether discovery orders that are deadlines, case management orders as far as disclosure of experts, if that would be set aside or not. The judge did not address that. So I think there's an issue as to that. Well, doesn't that affect the viability of the question? Yes, and I think it's an issue of fact. That's why you can't say, we can't say as a matter of law the case was still viable. There's issues of fact involved with that. And at the hearing, the attorney from the- How much money did your client, in fact, receive? She says she received zero. I frankly don't know what happened with the money. I don't know because we never did discover. That's one thing we certainly were going to ask the appellees. The court order from back in 2007 said if Ms. Dennis didn't sign the settlement check, that any judge from that circuit could sign it. So I'm assuming that happened and the money was dispersed to the appellees. But I don't know, and that's not in the record, so we really don't know. But in the affidavit from Ms. Dennis that I filed in opposition to the summary judgment in the legal practice case, she says she got no money from the settlement. And just very quickly, I want to also address the issue of the inadequacy of the settlement that was reached for $15,000. I think I spelled out in the brief why I think there's at least an issue of fact as to whether that was an adequate settlement. I think regardless of whether the case was still viable, that's still a separate claim that can be brought against the appellees. How can that be brought against the appellees if there's been a- How can that be a separate question? Well, I think it can be. You can't force the malpractice claim. Either you got one malpractice claim or you don't. That was one of the allegations of negligence that we listed in our initial complaint because that was done before Mr. Wissner ever got involved, and ultimately that settlement was enforced by the trial court. So we can look at the adequacy of that settlement and see whether or not under the facts of the case that was an adequate settlement. But if the proximate cause is broken and the case was still viable, then that doesn't matter, does it? Well, I think it does, and I think the proximate cause issue that there was- What case law suggests that, that that's still- Well, the one case, I think it's McCarthy that I cited in my reply brief. The closest I could find there was a case where the plaintiff went to trial and during the trial settled the case before the jury returned a verdict and then had hired a second attorney to review the settlement with him and see whether or not he should sign the release. And then after that, after he had a second attorney that was hired to review the settlement for him, he signed the release papers and then eventually sued the initial attorney, the trial attorney, for malpractice. And the court did allow that case to proceed. It didn't really specifically address the issue of the role of the successor attorney, but there was another attorney that became involved in that case that told- You just have time on your phone. All right. Thank you. Mr. Corsi? You may respond. Thank you, Mr. Chief. Presiding Justice, and may it please the Court, my name is Michael Corsi. I represent the appellees in this case. There's two basic issues before this Court. The first issue really is was Mr. Wisner successor counsel to the Winstein firm? And the second issue is whether the underlying medical malpractice case was viable at the time that Mr. Wisner entered his appearance. In listening to the arguments here, I believe that there is a more initial issue, and I'll address that very briefly, and that is as to whether there's questions of fact with regard to the record on appeal as it exists right now. The standard on a motion for summary judgment is simply that we must show either that a plaintiff cannot prove an element of their case or that they have failed to prove an element of their case. Since discovery was closed, obviously we're not dealing with a failure to prove. It's more of an inability to prove type of situation. When we filed that motion, that Supreme Court Rule 191 would have allowed a plaintiff to seek additional discovery if she thought or believed that additional discovery could create factual issues. That was never raised before the trial court. It really wasn't raised before this Court. So if there's questions of the record, that certainly could have been addressed in the trial court. Discovery was, just so I'm clear, discovery was closed in the malpractice case? In the medical malpractice or the legal malpractice? No, in the legal malpractice case. No, discovery was not closed. We brought our motion for summary judgment arguing that even if we go through all of discovery, we're never going to establish proximate cause here. And to answer your Honor's question from earlier, our motion for summary judgment also raised an issue as to damages, so that's why the trial court went into damages and said this is a question of fact. So really the only issue here today is proximate cause. The case law in Illinois, going back quite a distance, has established that if another attorney comes in and the case is still viable, well then the first attorney cannot be on the hook. What does viable mean? In other words, if this case is screwed up beyond repair when the second attorney comes in, you consider that even, but it hasn't been dismissed, is that viable in your mind? No, no it wouldn't be. And that's the most important aspect of your Honor's question was, is it screwed up beyond repair? And do we know? With regard to the legal malpractice case? Yes, sir. No, the medical malpractice case. Sorry, I misspoke. With regard to the medical malpractice case, what the record tells us from Judge VanderWheel's opinions, both in the medical malpractice case and in this malpractice case, is that no experts were disclosed in terms of medical causation. However, he also indicates that plaintiff could have voluntarily dismissed the medical malpractice case, refiled it, and started over. Well, can't the judge say, wait a minute, you blew the deadlines in the last case, I'm not letting you start over. He can consider the discovery violations in the first case. Plaintiffs don't automatically get a do-over in that case, do they? Absolutely. But in terms of Judge VanderWheel's decision in this legal malpractice case, if there had been a 219C finding, then upon refiling, yes, plaintiff would have been stuck with the witnesses that she had disclosed up to that time. The opinions from Judge VanderWheel show that that was not the case. There had never been any irreversible entry limiting her to the witnesses that she had. And secondly, when Mr. Wisner addressed Judge VanderWheel in this case, he told the court that he would be able to pursue the medical malpractice case and obtain a better settlement or verdict for her even without an expert. So the question of whether he's successor counsel, and Your Honor mentioned form over substance, and I would submit that this is literally form over substance, where we have an appearance form on file from my clients, the appellees. And then the question is, what's the practical effect of that appearance? It's simply a form on file, and where do we stand as of May 21st when there's the hearing? Where do we stand as of June 11th, 2007, when there's the order? If we look at form over substance, Mr. Wisner filed his appearance as well. He indicated, and this is the record at page 170, that he was trial counsel, that he was substitute counsel. He did not indicate that he was additional counsel. He did not indicate that he was appearing for the limited purpose of contesting the motion in force. Instead, he represented to the court that he could do better for Ms. Dennis if allowed. Well, assuming he didn't have, when he made that comment, he didn't have an entire record, did he? He was assuming he would be able to do these things. You're a defense lawyer, right? Correct. Okay, I used to be a defense lawyer. Now, let's talk common sense. What I'm wondering is how in the world did the defense lawyer, the defense on this case, and the underlying medical practice case, get the upper hand to the point where they were able to shove a $15,000 settlement down his throat? And something happened. I mean, at least, and I'd like to know what. It seems to me the trial court should have liked to have known what occurred here. That all of a sudden, let's say having defended these cases, I look at the case and say somehow the defense lawyer got the upper hand and shoved the settlement right down his throat. At least there's a question as to that that ought to be answered that goes to whether the underlying case was still viable at the time the motion to enforce settlement was thrown in at the lawyer. The turning point in the medical malpractice case came during the deposition of one of the cleanest treating physicians. I think it was Dr. Wiggle. I may be incorrect. Weigel. Weigel. Thank you. And that deposition was submitted to the trial court in support of the motion to enforce. And I've read that deposition. I believe it's in the record. It is probably one of the most impressive depositions that I've read in my career. From my visit, you can see that it's not a long career. But the doctor was taken through her deposition, gave her opinions regarding causation for some nerve injury. The doctor was then presented with some additional medical records that were not presented informing her opinion and completely about-faced, said I would not give an opinion on causation having now reviewed these records. At that point, then, there was the $15,000 settlement offer. And that was what led to the recommendation of that offer. And that was in front of Judge Vander Weigel. Well, you've got admitted liability, basically, from the defendants, right? In the medical malpractice? As far as, yeah, our VAD, we misread the text. We mislabeled the slides. Correct. And the plaintiff had surgery, right? She had some lymph nodes removed. Yeah. That was surgery. Yes. And what were her medical specialists for the surgery? There's a little bit of a dispute as to that. The medical bills looked to be approximately $15,000. There was, though, some collateral evidence that those were paid by Medicaid or Medicare. So they were significantly less than the billable amount. To answer Your Honor's question, the amount that she actually received from the settlement or would have received from the settlement was zero. But there was also the issue of a loan, a litigation loan that she had taken out, which put approximately $10,000 in her pocket. So to answer the question of specialists, it's kind of unclear because, you know, the loan is so – Was there testimony that lymph nodes are like appendix, like your appendix, they're just some archaic liposynthesis that is no good, remove them, no big deal? That I don't know, Your Honor. Well, that sounds – wouldn't a reasonable plaintiff's lawyer be part of damages saying, hey, she no longer has her lymph nodes because of this mistake, these lymph nodes? I mean, aren't all these questions a fact? There were many allegations made in the initial file of the complaint, okay? I mean, there was disfigurement, et cetera. And all we have here is defense deposing a treating physician, and there's nothing else the plaintiff's has done except file the complaint, right? And I believe that's why it was appropriate for Judge Vanderbilt to say that damages are going to be a question of fact if we get there through proximate cause. Well, let's look at the proximate cause again on viability. On one hand, this order that the trial judge entered said that if you pay a certain amount of money, then I'll let you pursue the underlying claim. Is that right? Yes. Okay. And that means that the underlying claim contingent on payment could be still viable, right? Correct. On the other hand, as you point out, the $15,000 came about because there was a deposition taken of this doctor who more or less said you don't have a cause of action, so there was no viable case left if they didn't have some other expert, right? I don't respect that. I would disagree. So how is it viable? I mean, you suggested the deposition was devastating. That wasn't your word, but that's what you suggested. It was impressive. Yeah. What did the deposition go to? Not all of us have the record to look at that deposition, but it seems like from the briefs the deposition just went to one of the claims, which was the arm pain, right? Nerve impingement, correct. But there was other allegations. Oh, certainly. I mean, she was falsely diagnosed with cancer. I mean, I'm accepting that for the purposes of this appeal, that there could possibly be damages in excess of $15,000. I don't think that it would have been impossible for purposes of this appeal that Ms. Dennis could have gotten a liability expert, tied up all of her complaints, be it psychological, be it physical, anything of that nature, to the misdiagnosis. But, you know, again, on this viability issue, not because it could be tied into whether or not she could come up with the money, and obviously she didn't come up with the money, so the claim went away, right? And I think that... So then it wasn't viable then, was it? Respectfully, it was viable. And here's why. Was it viable conditioned on her coming up with the money to pay the previous lawyer? The ability to pay for it doesn't factor into the viability analysis. Well, and the judge's order did, I guess, didn't it? No. The best way to probably think of it is this. In terms of a voluntary dismissal, because that's essentially what we have here. With a voluntary dismissal, then there is the leave to refile the complaint. As part and an inseparable part of refiling a complaint is, of course, filing the fee to refile that complaint. And viability simply looks at, is it legally viable? Is it barred by some other legal matter, such as a 219C ruling, such as a statute of limitations? It does not look at practical viability. And what I would call practical viability is the ability of a plaintiff to finance a continuing litigation. Well, let's back up for a second. What was before the trial judge and the summary judge was a motion to enforce the settlement, right? Correct. Okay. And the trial judge crafted some order, right? Doing equity. Doing equity. Saying what? And that is to the motion to enforce the judgment, right? The settlement, correct. Yeah, the settlement. Was this the agreement that the plaintiff had with her attorneys from the outset that she would front the cost? No, it was a reimbursement. So at the conclusion of the case. Correct. But then all of a sudden, her lawyers come in and move to enforce this settlement. And then the trial judge says, well, if you pay them their money, if you come up with a cost on this case that's still ongoing, something she never planned on to begin with, then I won't enforce this settlement. So the default was if she didn't come up with the money, what happens to the motion to enforce? He was enforcing the settlement. Correct. So he's enforcing the settlement. Was the claim still viable? Prior to the enforcement of the settlement, yes. Once the settlement is enforced because of the failure to tender the fees, then it is no different than the expiration of one year following a voluntary dismissal. So how's that not different? It's no different because now there's finality in the case that is irreversible. I mean, this is a strange thing. So a malpractice claim is viable or not viable based on the ability of a plaintiff to come up with some cash. And that's why I think. I mean, isn't that what we've got? That is where a plaintiff would have this case go. And it would ask courts in Illinois to determine viability of cases based on practical considerations of your client's ability to refile a case following your withdrawal. That would call on attorneys who have taken a case. But the attorneys agreed when they took this case, you just said, to front the cost in being reimbursed. Now, all of a sudden, the trial judge changes the contract. I mean, one of the things he could have said was, hey, look, I'm not going to enforce this settlement, but these attorneys have a lien on this case. And when it's all done, they'll get paid just like they agreed to when they took the case. But instead, no, you want to go on with this case, you pay them now. What was that all about? I think what that was is that there is now on the record an affidavit by the plaintiff that she agreed to that settlement. And regardless of whether it was based on alleged negligence, if you have a situation where a plaintiff, a client, is agreeing to a settlement, the attorneys are now entitled to the fees much like a real estate broker who finds a ready, willing, and able buyer, and the client changes the line. Well, that's the whole deal about the successor attorney. They were trying to say, no, there was a mistake. I don't want this settlement agreement enforced. It wasn't that the whole purpose of a motion, a hearing. And that's why in equity, though, Mr. Wisner and plaintiff would be gambling with the attorney's fees and costs that my clients had secured through a $15,000 settlement. Well, I mean, come on. Now, a $15,000 settlement in this case, I mean, do you think that a reasonably competent trial lawyer could have come up with some damages for the fact forget the surgery, forget going under the knife, anesthesia, all that stuff, but saying, hey, this lady was told, my client was told she had cancer. And so between then and then and the devastating, do you think a happily competent trial attorney could have got some damages for that aspect of the case? For the purposes of this appeal, we are solely, for purposes of summary judgment, assuming duty and breach of duty. We're assuming that it was improper to recommend a $15,000 settlement. The question is, do we get from there the damages? May I briefly conclude? Yes. Mr. Wisner was a successor attorney here. There's no reasonable conclusion. He represented that he would take over the case and pursue it. He didn't. That's not my client's fault. They did not cause her to lose the ability to pursue it. She had a legally viable claim at the time that my clients no longer represented her, and therefore summary judgment is appropriate with a lack of proximate cause. I'd like to ask one more question before you get done, and that is when your clients achieved getting the judge to order this new situation where she has to come up with the money and then she can pursue the case, when your clients did that, didn't they terminate the viability? When they got an order from the judge that was favorable to them to get paid the money, didn't that terminate viability in the case so the case wasn't viable? Respectfully no, Your Honor. That goes to practical viability. My clients were comfortable with whatever Judge Manuel wanted to do. They brought a motion to stop the clock from running this 30 days following the voluntary dismissal. Mr. Wisner was the one who recommended to the court I'll protect their fees. The court then entered an order as to how best to go about protecting them. There was a contested hearing between the two sets of lawyers? Absolutely. Okay, the successor lawyer and the previous lawyer? Correct. Whatever they were. My clients and Mr. Wisner. And they succeeded in getting the judge to enter this order? Correct. Which meant viability was contingent on payment? I think it recognizes, though, that the case is viable. And the question then is who takes over responsibility for ensuring that it remains viable? And when my clients were out of the case,  to do anything to modify this order if Ms. Dennis was no longer able to perform under the terms of that order. Well, why would they modify it? They had it entered. And it's just at that point, did they have any duties? At what point did their duty to their client cease? Their duty to their client ceased when they were no longer responsible for conducting that hearing. Well, when was that? That was when Mr. Wisner said that he would do it. And the change in circumstances comes about, as we see from Ms. Dennis' affidavit, in that Mr. Wisner told her sometime in May 2007 that he was going to be retiring. He's not pursuing this action. He won't be advancing any fines on her behalf to do this action. At that point, it would have been appropriate to go in front of Judge Vandewidle, tell him I'm unable to comply with this order because of X, Y, and Z, and the equitable circumstances then would have been different. My clients didn't have any responsibility to present change in equitable circumstances. When did your clients actually divorce their client? I think it came about sometime between February and June of 2007. And what it goes to is this. My clients met with their client and essentially had what they believed to be an agreed-upon settlement. Ms. Dennis believed she didn't agree with that or that they had given her bad advice. At that point, not only was there a conflict of interest in terms of being paid and possibly not being paid between my clients and Ms. Dennis, there was also the possibility that my clients would be called as a witness to testify to the acceptance of that settlement agreement by Ms. Dennis and her understanding. I think at that point, probably right around May 21st, and certainly no later than June 11th. Was that when they withdrew and informed their client that they no longer were representing them? I think the withdrawal was form over substance. I think at that point, Ms. Dennis had already continued the hearing twice to find a new attorney. I agree there's procedures for that. I'm sorry? I agree there's procedures for that. I agree. And that's it. And do you think form over substance to a lawyer might be different than form over substance to a layperson who has hired these attorneys to represent her? Possibly. Possibly. I think Ms. Dennis probably wouldn't know what forms were on file in terms of what appearances. Well, that doesn't really go to the appeals particularly. It's a viability issue. Okay. Well, thank you. We'd love to go on. Thank you very much. Ms. Stewart, you may reply. Thank you, Judge. Just to follow up, Judge Blumberg, what you said, there are definite rules for an attorney who wants to withdraw from a case. I think it's Supreme Court Rule 13 that specifically states once an attorney enters in a case or files pleadings, he must specifically file a motion to withdraw, giving notice to all parties and the court, and the court has to enter an order allowing them to withdraw. An attorney can't just get out of the case because they want to once they've filed suit. They have to obtain leave of court to do that. There's nothing in the record that that ever occurred. For any of the lawyers, right? For either lawyer, any of the lawyers. That's correct, Judge. And there's nothing in the record that this trial judge may be going to inquire into. No, Judge. And I think with my opposing counsel, when he's asked when did the relationship end, I think clearly by his response even, there's an issue of fact on that. Somewhere between January and May, sometime in there, did it end? Well, when did it end? There's nothing on paper to show when it ended. There's nothing in the record that a letter was ever sent saying we don't represent you anymore. There's nothing in the record that Ms. Dennis sent them a letter saying I don't want you to represent me anymore. Of course, if the case wasn't viable or was still viable, that doesn't matter, does it? Well, I think that goes to the viability because they were still her attorneys, so as far as the role of successor counsel, I think it's not, it doesn't matter as much if they're even still in the case. It's not like the other cases where there's one attorney totally discharged out of the case, no question, then the plaintiff or defendant hires another attorney who takes over the case. That's just not the facts we have here. And I agree, though, that viability. So you're just saying as a matter of definition, you can't have a successor attorney when you still have an attorney? As an official successor attorney in these legal malpractice cases, yes. I think that's correct. You have to have somebody take over for another attorney. That didn't happen here. And I think clearly there's issues of fact as to whether the case was viable. But is that form over substance? I don't believe so. I mean, the Supreme Court rules, I don't think the Supreme Court would argue that's form over substance. These are rules I have to follow every day. The Court, I'm sure, has rules that we attorneys have to follow. All attorneys have to follow the rules of the Supreme Court. Well, the next lawyer was an officious intermenter. He was, right? An officious intermenter. They just didn't show up and say, I'd like to argue some case. They pretended to represent somebody. He came in, right. But then for the appellees to argue, they're no longer responsible for doing anything to the case because the other attorney entered. They had done the same thing. They're really in the same position. And I think the case wasn't viable. Judge Carter, as you pointed out, there was a condition set on the case not being finally dismissed or the dismissal remaining with prejudice as it had been entered already, only if my client paid money, $5,000, which she had no money to do that. That was an impossible task. She couldn't do it. This is not a case where Mr. Whistler could come in and say, okay, I'll pay the $5,000. He couldn't do that. It's against ethical rules. Plus, we don't even know there's another factual issue. Even if that had been done with regard to disclosure of experts, the record doesn't show that they could have even proceeded to a trial when they had no experts. So, practically speaking, there wasn't a good case anymore because there were no experts that had been disclosed. Whether or not they could have had that new order entered, we don't know. Successful lawyers come up with experts, though, on occasion. Right. And we don't know if that would happen. We have to go back with the facts here. There's nothing in the record to show they could have disclosed experts on the liability issue. And you've never gotten to the point of discovery where you had deposed the former defense lawyers who said, how did you get the upper hand? No, Judge. We hadn't even finished written discovery, actually. Those are a lot of things we'd like to find out about. There were no motions to delay the hearing on the summary judgment, though, were there, to do discovery? No, because, frankly, we thought, based on the facts that were there, that the judge, there was no basis to grant the summary judgment. There was never a request to the judge in this legal malpractice summary judgment motion to, say, delay the hearing because we want to conduct some more discovery. We never filed a formal request to continue that. That is correct. Everybody went ahead with the hearing on what you had at that time. Right, but we have to look at the facts that the judge reviewed at the time that he granted the summary judgment. I'm just saying what the facts in the underlying case were that were in front of him. Based on that, I don't think the case was viable. So we're stuck with hearing about viability based on what you had because you didn't do any motion to do more discovery or anything like that, right? No, I think you have to go by the record that we have in front of us, which there's issues of fact that remain based on the record in front of us, so that summary judgment was not appropriate at the time. And just briefly to address the issue of damages that were brought up, I mean, I agree that the deposition of the one treating doctor, Dr. Warble, addressed only one issue of the damages that Ms. Dennis was claiming, her continuing left arm pain. Clearly, she was claiming damages for emotional distress and being told she had cancer. She thought she might die because she had cancer. She did have unnecessary surgery, medical bills of $15,000. Clearly, there were other damages she had besides that. And in the motion to enforce settlement, that's another allegation of negligence we brought up. She had future medical listed. She would have. Yes, she was still getting treatment. Yes. Okay. Yes. And I think the fact that Medicaid paid the bills or not is really irrelevant. The amount of medical bills per Illinois case law is the amount that was charged at the amount that might have been paid by Medicaid. So with bills, if you agree that they're about $15,000, clearly the damages had to exceed $15,000 in this case. We have one minute. Thank you. As a brief matter. Yes. What kind of summary judgment would you say this? Was this a traditional summary judgment where there were conflicting facts and whether or not there's a material issue of fact on the issues or the issue about viability or whatever? Or was this a cell text kind of motion where there was no opportunity at all to ever present any evidence as to the causation or the viability? Well, I think based on the facts that we already have in the case, there's genuine issues of fact that still remain that preclude the judge issuing the summary judgment order. Based on the facts that were in the record as far as the complaint and the exhibits that were presented, there's genuine issues of fact remaining on that issue of approximate cause. Therefore, the trial judge should not have granted summary judgment. As the cases say, you have to court the Lopez and Sobolov case. Sorry. They talk about you have to look at can reasonable minds differ as to whether there's an issue about whether the case is still viable. And clearly, I think here there is. And that Sobolov case, I'd ask you to look at because that's maybe some of the most factually close to this case. That case was a divorce proceeding. And the wife, I believe, had hired two attorneys in the divorce case. And at some time during the pendency of that case, the husband basically, in violation of the court order, hid funds, took funds, sent them overseas. But eventually, the wife hired a third attorney who, kind of like Mr. Whistler, came in and filed motions on the day she entered her appearance. And later, the wife sued the first two attorneys for malpractice. And the attorney said that they couldn't be liable because there was a third attorney involved. The court said, well, whether or not when this third attorney got involved, she could have done anything to prevent the assets from being taken out of the country is a question of fact that the jury should decide. And I think that's exactly what we have here. You're talking about the Sobolov case? Yes, Judge. Okay. Thank you very much. Thank you, counsel. Thank you both, counsel. I tried to equalize your time here. Thank you, Judge. Thank you for your fine arguments in this matter this morning. The case will be taken under advisement and a written disposition shall issue. The court will stand at brief recess for panel change.